1            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF MISSISSIPPI
2

3    GEORGE WELCH                                      PLAINTIFF

4    V.                       CAUSE NO. 3:20-CV-122-NBB-JMV

5    CITY OF HERNANDO, MISSISSIPPI,
     OFFICER JOSEPH HARRIS, OFFICER
6    ROBERT SCOTT, OFFICER R. SWATZYNA,
     OFFICER A. LEWIS, IN THEIR OFFICIAL
7    AND INDIVIDUAL CAPACITIES, AND JOHN
     AND JANE DOES 1-10                               DEFENDANTS
8

9

10              VIDEO DEPOSITION OF BRIAN BELL

11
     Taken at the instance of the Plaintiff on Tuesday, May 25,
12   2021, at the Hernando Police Department, 2601 Elm Street,
         Hernando, Mississippi, beginning at 9:11 a.m.
13

14

15
                      (Appearances noted herein)
16

17

18

19

20

21

22

23
         REPORTED BY:  Courtney R. Taylor, CCR, TLC
24                     Alpha Reporting A Veritext Company
                       236 Adams Avenue
25                     Memphis, Tennessee 38103

                                                        Page 1

```
 1  was your directly (sic) superior officer?
 2       A.   Lieutenant Russell Lynch.
 3       Q.   You said Lynch?
 4       A.   Lynch.
 5       Q.   Is it L-Y- --
 6       A.   L-Y.
 7       Q.   Okay.  All right.  And I'm not going to be
 8  really long with you.  I -- I just had a -- a few
 9  questions regarding your interaction with a George
10  Welch.
11       A.   Uh-huh.
12       Q.   Do you know George Welch, my client?
13       A.   Not personally, just through my one
14  experience with him.
15       Q.   And when had you met with George Welch?
16       A.   It was in December of 2018.
17       Q.   All right.  And, at that time, how did you
18  come to meet George Welch?
19       A.   I had a call to his residence.
20       Q.   Do you -- do you remember who the call came
21  from?
22       A.   We don't know who it comes from.  Dispatch
23  gives it, so --
24       Q.   Okay.  And you were -- after you received
25  the call -- and that -- that call was to a 1777
```

Page 7

```
1        A.   I do.
2        Q.   What was the exchange that you had with the
3   homeowner?
4        A.   I knocked on the door.  He answered.  I
5   smiled and said, "I guess you know why I'm here?"
6   And he said, "I do."  And he said -- he said,
7   "Listen, I've got a parking lot area up on Motor
8   Scooter in Nesbit."
9        Q.   Yes, sir.
10       A.   "And I'm going to have it up there by
11  around 7:00 tomorrow morning, if that's okay?"  And
12  I said, "That's great.  Works for me," something to
13  that extent.
14       Q.   Was there any arguing with you at -- at the
15  house that evening?
16       A.   No.
17       Q.   Did he tell you to get off his property or
18  anything rude at all?
19       A.   No.
20       Q.   And it seemed to be a pretty pleasant
21  exchange, I think, both times that you've described
22  it.  You described it previously in court, and
23  you're describing it this morning consistently, that
24  there was nothing that seemed to be out of -- out of
25  place with the -- with -- with -- with the call when
```

Page 31

```
 1   anything like that, did you?
 2        A.  No.
 3        Q.  Basically, the interchange -- the -- the
 4   exchange was, "If you'll, you know" -- "You know why
 5   I'm here" -- now, for -- for you to have felt
 6   comfortable enough on a call to -- when you speak to
 7   him initially, you smile at him and say, "You know
 8   why I'm here," that -- and you can correct me if I'm
 9   wrong -- indicates that there had been a number of
10   calls from one person regarding that vehicle, right?
11        MR. BUTLER:  Object to the form.
12        You can answer.
13        A.  Ask that question one more time.
14        Q.  (By Mr. Perry)  When you arrived at the
15   house and you said, "You know why I'm here," that's
16   not an -- an exchange that you have on an everyday
17   basis.  I mean, you get calls about domestic
18   violence, for instance.
19        A.  Right.
20        Q.  You don't -- you don't go to the door with
21   a smile and say, "Well, you know why I'm here"?
22        A.  Correct.
23        Q.  All right.  And your inter- -- your
24   exchange with him on that particular date, about
25   "You know why I'm here," seemed to indicate that you
```

Page 34

```
 1   were familiar with -- with him because of calls
 2   regarding that trailer or a call regarding that
 3   trailer, correct?
 4       A.   Correct.
 5       Q.   And -- but it did not seem to you, at least
 6   in that evening, other than to tell him that you got
 7   a call regarding that trailer, to be a big deal?
 8            MR. BUTLER:  Object to the form.
 9       Q.   (By Mr. Perry)  It didn't seem like
10   something that you were wanting him to go to jail
11   that evening about, right?
12       A.   Correct.
13       Q.   And it did not seem like something that you
14   would have had -- have arrested him about, right?
15       A.   Correct.
16            MR. PERRY:  May I have just a minute?
17            THE VIDEOGRAPHER:  Going off the record
18       at 9:44 a.m.
19            (Off the record.)
20            MR. PERRY:  We're ready to go back on,
21       yes.
22            THE VIDEOGRAPHER:  All right.  One
23       second.  Let me start it up.
24            We are now back on the record.  The time
25       is 9:44 a.m.
```

Page 35

```
 1                CERTIFICATE OF COURT REPORTER
 2              I, Courtney R. Taylor, Court Reporter and Notary
 3     Public in and for the County of Bolivar, State of
 4     Mississippi, do hereby certify that the foregoing 39
 5     pages, and including this page, contain a true and
 6     accurate transcription of the testimony of Brian Bell, as
 7     taken by me in the aforementioned matter at the time and
 8     place heretofore stated by stenotype and later reduced to
 9     typewritten form under my supervision by means of
10     computer-aided transcription.
11              I further certify that under the authority
12     vested in me by the State of Mississippi that the witness
13     was placed under oath by me to truthfully answer all
14     questions in this matter.
15              I further certify that I am not in the employ of
16     or related to any counsel or party in this matter and have
17     no interest, monetary or otherwise, in the final outcome
18     of this proceeding.
19              Witness my signature and seal this the 9th day
20     of June, 2021.
21
22                              COURTNEY R. TAYLOR, CCR #1668
23
24
25     My Commission Expires:  August 19, 2023
```

Page 40