```
1               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF MISSISSIPPI
2

3      GEORGE WELCH                                      PLAINTIFF

4      V.                       CAUSE NO. 3:20-CV-122-NBB-JMV

5      CITY OF HERNANDO, MISSISSIPPI,
       OFFICER JOSEPH HARRIS, OFFICER
6      ROBERT SCOTT, OFFICER R. SWATZYNA,
       OFFICER A. LEWIS, IN THEIR OFFICIAL
7      AND INDIVIDUAL CAPACITIES, AND JOHN
       AND JANE DOES 1-10                               DEFENDANTS
8

9

10
                   VIDEO DEPOSITION OF SCOTT WORSHAM
11

12     Taken at the instance of the Plaintiff on Tuesday, May 25,
       2021, at the Hernando Police Department, 2601 Elm Street,
13          Hernando, Mississippi, beginning at 2:21 p.m.

14

15
                        (Appearances noted herein)
16

17

18

19

20

21

22

23
           REPORTED BY:  Courtney R. Taylor, CCR, TLC
24                       Alpha Reporting A Veritext Company
                         236 Adams Avenue
25                       Memphis, Tennessee 38103

                                                          Page 1
```

1       Q.  (By Mr. Perry)  All right.  And the
2  response said that -- that -- it named a specific
3  statute, and I asked some of the officers about it
4  earlier.  And -- and that statute lays out clearly,
5  or at least clearly, in my -- my mind, when you can
6  enforce -- enact police regulations.
7            And the statute number is Mississippi Code
8  Annotated 21-19-15.  21 being the municipality
9  statute, and section 19 is health, safety and
10 welfare statute.  And 15 being the subsection of
11 those stat- -- that statutory section.
12           Are you aware of that statute?
13           And I'll let you look at it.
14      A.  Do you mind if I read?
15      Q.  No, sir, not at all.  Go ahead.
16      A.  Yes, sir.
17      Q.  And when were you made aware of that
18 statute?
19      A.  Oh, sir, I couldn't tell you that.
20      Q.  Prior to this litigation?
21      A.  Prior to the -- so -- to this, I -- I have
22 read -- and the reason that I -- I -- I feel
23 confident that I've read this is because we had an
24 issue of fireworks come up and everyone who owns
25 dogs in the city, complaining about fireworks.  So

Page 42

```
 1  parking -- a parking infraction -- let's say that he
 2  -- if he was right, on a strictly parking
 3  infraction, would authority have been -- would
 4  Mr. Harris -- or Officer Harris have been granted
 5  authority to make an arrest simply on the parking
 6  issue alone?
 7           MR. BUTLER:  Object to the form.
 8           You can answer, if you can.
 9      A.   Yes, our state statutes are arrestable
10  offenses.
11      Q.   (By Mr. Perry)  The parking offense is --
12  nonmoving violations are arrestable?
13      A.   They could be, yes.
14      Q.   If a person gets a ticket for parking up on
15  the -- on the square -- for taking two spaces,
16  you're saying that immediately -- instead of writing
17  a ticket, that it's left to the discretion of
18  officers to make an arrest on that person, if you
19  want, in some instances, and to give a ticket in
20  other instances?
21      A.   All the -- all arrests and citations are
22  discretionable.  I mean, that's -- all are.
23      Q.   So just for clarity's sake and for the sake
24  of this record, you're saying that a nonmoving
25  violation, that it's the discretion of an officer to
```

Page 51

```
 1   arrest a person or to give a citation and write it
 2   on a person's car versus a misdemeanor that might
 3   happen in the officer's presence for fighting,
 4   resisting, et cetera, et cetera?
 5           Just simply the -- a parking violation is
 6   arrestable on -- in your opinion?
 7           MR. BUTLER:  Object to the form.
 8           You can answer, if you can.
 9       A.  State statues are arrestable offenses.
10       Q.  (By Mr. Perry)  There's a lot of -- I mean,
11   there are a lot of state statutes that talk about a
12   whole lot of different areas --
13       A.  I could be --
14       Q.  -- right?
15       A.  -- arrested for an abandoned refrigerator.
16   Yes, sir.
17       Q.  Right.  But that would depend on the --
18   the -- the place that the refrigerator is abandoned,
19   if you throw off your truck in a -- in a -- in a
20   wooded area, because you think nobody is looking at
21   you, it might be arrestable.
22           You're saying, though -- according to what
23   you're saying, I park in a way -- or in a place that
24   I'm not supposed to park, it is arrestable
25   automatically because there is a statute regarding
```

Page 52

```
 1   that, even if there's not a specific statute telling
 2   me where I can and can't park?
 3           MR. BUTLER:  Object to the form.
 4           You can answer.
 5       A.  The discretion for our officers and every
 6   officer of this state, if there is a -- I'm not
 7   saying that every -- obviously, everyone is not
 8   arrested for every statute code within the book.
 9           I am saying that it is discretionary upon
10   the officer to make an arrest in violation of the
11   state statute code.
12       Q.  (By Mr. Perry)  In this instance, is there
13   anything regrettable about the actions of your
14   officer in retrospect?
15           MR. BUTLER:  Object to the form.
16           You can answer, if you can.
17       A.  I wasn't there, sir.  I have no idea what
18   transpired on that day.
19       Q.  (By Mr. Perry)  Other than what you've
20   read?
21       A.  Other what I've read.
22       Q.  All right.  And if your officers start
23   arresting for parking violations, would that not be
24   something that you would intervene and say, "Hey,
25   guys, without a" -- "without more, it's not good
```

1  policy to arrest a person solely on a parking
2  violation"?
3         MR. BUTLER:  Object to the form.
4         You can answer.
5     A.   Yes, sir.  But I think we should all agree
6  that, in this case, we've been to this residence
7  more than a dozen times for the very same scenario.
8  So that is -- that's not the same scenario that
9  you're stating.
10    Q.   (By Mr. Perry)  Let me -- let me ask you
11 this -- and there was a position that was positive,
12 at least by the county court judge -- why not say
13 something to the person making the call?
14        If the same call is coming in and, at
15 least, according to one officer, it was not an
16 arrestable offense or an offense at all, why not
17 tell the guy calling in, "If you call in, we're
18 going to have to give you a citation"?
19    A.   So I'm not aware of who called on -- on
20 every scenario, and I did not look at the specific
21 CAD entries to see who called.  It is my
22 understanding there was one individual in the
23 neighborhood that -- that called a lot on this
24 particular incident.
25        But every one of them, I'm -- I'm not aware

Page 54

```
 1                Okay.  All right.  Number 12 is a Robert
 2    Scott e-mail, use of force policy training, and an
 3    e-mail date is February 16th, 2020?
 4         A.   Yes, sir.
 5         Q.   What is that asking him to do, or what is
 6    that asking -- or commanding, rather?
 7         A.   So this -- so J.W. Cotter is our training
 8    commander, so this would be from Lieutenant Scott to
 9    Lieutenant Cotter, just documenting that the officer
10    did train on use -- our use of force policy and went
11    over our operational emergency vehicles on the
12    particular date, which is February 16th, 2020.
13                And he listed the number -- the name of the
14    officers who attended that training.
15         Q.   Okay.  We're getting close to the bottom.
16         A.   Yes, sir.
17         Q.   Section 14, where it speaks to Hernando
18    Police Department training reports.
19                Do you all keep and maintain those
20    reports --
21         A.   Yes, sir.
22         Q.   -- when individuals go through the
23    trainings that they're supposed to?
24         A.   Yes, sir.
25         Q.   And I see a number of signatures on the
```

Page 100

```
 1             All right.  And then I see on the various
 2    training reports and certificates, section 15 has
 3    Joseph Harris's, section 16, Adrian Lewis's.  17 is
 4    Roger -- Roger --
 5        A.   Swatzyna.
 6        Q.   -- Swatzyna, and Robert Scott is section
 7    18.
 8             If you can just canvas through and make
 9    sure that I haven't added somebody's training
10    certificates or --
11        A.   I'm not the custodian of these records, but
12    they certainly look authentic --
13        Q.   Okay.
14        A.   -- as it pertains to our Training
15    Department.
16        Q.   All right.  And at the appropriate time,
17    we'll go through some other identification, but I --
18    but for the sake of what we're doing with the
19    deposition, you're the -- the face of the City --
20        A.   Absolutely.
21        Q.   -- as far as right now?
22        A.   Yes.
23        Q.   So I wanted to make sure that those --
24    when -- in -- in preparation for this, outside of
25    counsel, did you have discussions with anybody else?
```

Page 102

```
1                CERTIFICATE OF COURT REPORTER
2             I, Courtney R. Taylor, Court Reporter and Notary
3     Public in and for the County of Bolivar, State of
4     Mississippi, do hereby certify that the foregoing 105
5     pages, and including this page, contain a true and
6     accurate transcription of the testimony of Scott Worsham,
7     as taken by me in the aforementioned matter at the time
8     and place heretofore stated by stenotype and later reduced
9     to typewritten form under my supervision by means of
10    computer-aided transcription.
11            I further certify that under the authority
12    vested in me by the State of Mississippi that the witness
13    was placed under oath by me to truthfully answer all
14    questions in this matter.
15            I further certify that I am not in the employ of
16    or related to any counsel or party in this matter and have
17    no interest, monetary or otherwise, in the final outcome
18    of this proceeding.
19            Witness my signature and seal this the 9th day
20    of June, 2021.
21
22                         COURTNEY R. TAYLOR, CCR #1668
23
24
25    My Commission Expires:  August 19, 2023
```

Page 106