IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

GEORGE WELCH                                                                                      PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:20-cv-122-NBB-JMV

CITY OF HERNANDO, MISSISSIPPI,
JOSEPH HARRIS, in his official and
individual capacity, AND ROBERT SCOTT,
in his official and individual capacity                                                         DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court upon the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

### Factual Background and Procedural Posture

The plaintiff, George Welch, brings this Section 1983 lawsuit against the defendants, City of Hernando, Mississippi, Hernando Police Officer Joseph Harris, and Lieutenant Robert Scott, for an allegedly unlawful arrest and the use of excessive force.

Welch owns his own business, Geo Transportation, through which he transports vehicles for a fee. A portion of his business comes from contracting with automobile dealerships while other business comes from bidding on jobs through a website. Welch performs his work with a Dodge 3500 dually truck and four-car trailer. Geo Transportation does not have a central business location, but Welch pays $100 per month to park his truck and trailer at a truck line business. Welch's residential address is on Trapper Drive in the Forest Meadows subdivision in Hernando. The streets surrounding Welch's home are public roads.

On at least eight different occasions, the Hernando Policy Department was dispatched to Welch's residence because he parked his truck and trailer on the street by his house. The officers

responded to complaints from neighbors, and usually Welch simply received a warning or was instructed to move his vehicle. On one occasion, March 22, 2017, Welch was issued a ticket and required to pay a $125 fine.

The present lawsuit arises from an incident that began on December 22, 2018, at around 10:30 or 11:00 p.m., when Hernando Police Officer Brian Bell responded to a complaint about Welch's truck and trailer and visited Welch's home to address the matter. Welch told Bell that someone had taken his parking spot at the truck line, but Welch promised to move his truck "first thing in the morning." Defendant Officer Harris came on shift on December 23 at 6:00 a.m. That morning, the police department received another complaint about Welch's truck and trailer. Harris, who was aware Bell had visited Welch's home the night before, responded to the new complaint between 7:00 and 8:00 a.m.

Upon his arrival, Harris parked his patrol car and approached Welch's house. Welch exited the home and met Harris halfway down the driveway. Harris indicated that Welch knew why he was there, and Welch responded, "[Y]es – because "[t]hese bitches … called again." Welch admitted in his deposition that he was "frustrated" and angry and that the term "bitches" was a reference to his neighbors.

Harris instructed Welch to move the vehicle, and Welch began walking toward it. As Welch was walking toward the truck, Harris instructed him to provide his license. Welch responded by stating, "I don't have to show you a damn thing." Welch then added, "[W]hat do you need to see my license for[?]" Harris responded by repeating, "I need to see your license."

Welch did not have his license on him, so he began walking toward the house where it was located and apparently indicated to Harris what he was doing. As Welch walked toward the house, Harris followed. Welch, who had his cellphone in hand, then attempted to "Face-Time"

2

with his girlfriend on the phone. Welch asserts that Harris then grabbed his left hand, put it behind his back, tripped him to the ground, put his knee on his back, and placed a handcuff on Welch's left wrist. Welch continued holding the cellphone in his right hand attempting to FaceTime. Harris instructed Welch to put down the phone and to give him his right arm, but Welch refused. Welch does not recall how many times he was instructed to drop his phone and give up his other arm. Harris then tased Welch, tossed his cellphone, and was able to get Welch's right wrist in handcuffs.

It is undisputed that Harris pressed the taser only twice, and no probes had to be pulled from Welch's skin after the tasing, meaning he was "drive stunned." A drive-stun is a pain-compliance technique that is a lesser quantum of force than when probes are deployed.

After Welch was secured in handcuffs, other officers arrived on the scene. Defendant Lieutenant Scott was one of the officers who Welch says was nice to him and treated him with respect. Welch was picked up off the ground and placed in the back of Harris' patrol car. The officers brought Welch his cellphone, went inside Welch's house and got his wallet at his request, and placed his glasses back on his face for him. Welch told Harris that the handcuffs were too tight, and Harris loosened them at Welch's request. After being booked, Welch bonded out around three hours later.

Welch has never sought medical treatment as a result of the incident. He produced photographs during discovery that he asserts represent three marks on his back from the taser being deployed. Welch says the marks went away after "a few weeks."

Harris charged Welch with obstructing a public street, resisting arrest, and disobeying a police officer. Welch was found guilty of the charges for street obstruction and resisting arrest in municipal court but appealed to county court. The county court dismissed the charges on the

3

reasoning that, according to Black's Law Dictionary, the word "obstruct" is defined as "completely impassable," and the street in this case was not rendered "completely impassable" by Welch's truck because cars could pass on the wrong side of the road. The court further found that Welch was entitled to use reasonable force to resist what the county court opined amounted to an unlawful arrest. The county court dismissed the conviction for resisting arrest.

Welch filed his complaint on April 27, 2020, and was subsequently granted leave to amend his complaint, which he did on August 12, 2020. Welch brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, alleging false arrest without probable cause, a violation of his First Amendment right to freedom of speech, excessive force, failure to intervene (against bystander Lieutenant Scott), and municipal liability against the City of Hernando for failure to properly supervise and train. The defendants have now moved for summary judgment on all claims.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

4

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

As the defendants note, the legal standards which govern the allegations in the plaintiff's amended complaint are well settled. Actions against municipalities are analyzed under a framework that requires a plaintiff to show both (1) that a violation of the Constitution occurred and (2) that a governmental policy or custom was the moving force behind the violation. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Individual capacity defendants enjoy qualified immunity unless a plaintiff can show both (1) that a constitutional violation occurred and (2) that the individual capacity defendants acted objectively unreasonable under clearly established law. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005). Under both these standards, Welch's claims are deficient, because Welch cannot prove a constitutional violation.

Welch was arrested on December 23, 2018, for obstructing a public street, disobeying a police officer, and resisting arrest. He was found guilty in municipal court of the obstruction and resisting charges, but the county court overturned the conviction on appeal. Welch appears to believe that the appeal finding made his arrest unlawful, but that represents an inaccurate understanding of the law. "The Constitution does not guarantee that only the guilty will be

5

arrested[.]" *Baker v. McCollan*, 443 U.S. 137, 145 (1979). "[I]t doesn't matter if the arrestee was ever convicted of the crime for which the officer arrested him." *Loftin v. City of Prentiss*, 539 F. Supp. 3d 617, 625 (S.D. Miss. 2021). "[P]robable cause 'does not demand any showing that [the officer's belief that a crime has been committed] be correct or more likely true than false.'" *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

To establish a claim for false arrest, a plaintiff must prove that he was arrested without probable cause. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). "Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Carr v. Hoover*, 837 F. App'x 279, 283 (5th Cir. 2020). "The probable cause can be for any crime, not just the one the officer subjectively considered at the time." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017).

Regarding Harris' decision to arrest Welch, the following facts are undisputed: Welch previously told Officer Bell he would move the truck "first thing in the morning" but failed to do so; Welch's truck was preventing vehicles from traveling on the correct side of the road, forcing cars to move to the opposite lane of travel to pass; Welch was frustrated, angry, and cursing upon Harris' arrival at Welch's home; Welch went toward his house where, in theory, a weapon could have been located; Welch refused to comply with requests of the officer; and Welch told Harris that he "didn't have to show [him] a damn thing" when Harris asked for Welch's license.

As the defendants argue, these facts more than satisfy the "low bar" of probable cause. *See Kaley v. U.S.*, 571 U.S. 320, 338 (2014) ("Probable cause … is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians,

6

act."). Under Mississippi Code § 97-35-25, it is "unlawful for any person … to wilfully obstruct the free, convenient and normal use of any public sidewalk, street, highway, alley, road, or other passageway by impeding, hindering, stifling, retarding or restraining traffic or passage thereon[.]" The summary judgment record before the court includes photos clearly showing that Welch's truck was blocking an entire lane of a public road – and on the crest of a hill, no less. Further, there is an objective ground supporting the fact that Welch himself knew he was violating the law. Prior to the incident giving rise to this lawsuit, Welch paid a $125 fine for the same conduct. Mississippi law also provides that "[n]o person shall wilfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic." Miss. Code Ann. § 63-3-203. Welch does not deny that he refused Harris' instruction to provide his driver's license, stating, "I don't have to show you a damn thing." Additionally, Mississippi law makes it "unlawful for any person to obstruct or resist by force, or violence, or threats, or in any manner, his lawful arrest[.]" Miss. Code Ann. § 97-9-73. Welch does not deny that he failed to comply with Harris' multiple commands to put down his cellphone and offer his right hand for cuffing during the arrest.

In sum, Welch's arrest was not a constitutional violation because there was an objective basis for Harris' belief that Welch violated the law. Further, the county court's reversal of the municipal court's conviction is inconsequential. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (that a suspect may "later [be] acquitted of the offense for which he is arrested is irrelevant" to the probable cause inquiry). Because no constitutional violation occurred, the defendants are entitled to summary judgment on Welch's false arrest claim.

To establish an excessive force claim under the Fourth Amendment, a plaintiff must show that he suffered an injury that resulted from force that was excessive to the need – that is, force

that was objectively unreasonable. *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). "[M]inor, incidental injuries that occur in connection with … an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). Here, Welch admits he never received any medical treatment as a result of the taser deployment. He alleges that the taser caused three marks on his back which disappeared after a few weeks. "[W]here a suspect resists arrest or fails to follow police orders [as was the case here], officers do not violate his right against excessive force by deploying their taser to subdue him." *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013). This court concludes, as a matter of law, that Welch admittedly failed to follow police orders and that he sustained only *de minimus* injuries during the arrest. His excessive force claim should therefore be dismissed.

Welch asserts a claim under the First Amendment for violation of freedom of speech, alleging he was arrested in retaliation for his speech to Officer Harris regarding his driver's license. This claim fails because Welch has failed to establish that he was engaging in speech on a matter of public concern – that is, protected conduct – as opposed to mere private conduct. Welch has also failed to direct the court to a scintilla of evidence which would allow a reasonable juror to find the requisite causation element for such a claim. The record before the court shows only that Officer Harris arrested Welch because he was violating the law, acting unruly, and failing to comply with Harris' instructions – not for retaliation for conduct protected by the First Amendment. Accordingly, this claim must fail.

Welch also brings a claim against Scott for "failing to intervene" in Officer Harris' conduct. Because Welch cannot establish a constitutional violation based on Harris' conduct, his claim against Scott is a non-starter. "The Fifth Circuit has held where no constitutional violation

8

… is shown, there is no bystander liability for failing to intervene." *Mack v. Smith*, No. 5:15cv202, 2017 WL 8217697, at *4 (E.D. Tex. Dec. 29, 2017) (citing *Davis v. Cannon*, 91 F. App'x 327 (5th Cir. 2004)).

As for Welch's claim of municipal liability, it is well established that, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012). Because Welch cannot demonstrate a constitutional violation against the individual defendants, there necessarily can be no municipal liability. *Id.* Accordingly, Welch's claims against the City of Hernando and his claims against the officers in their official capacities[1] should be dismissed.

Conclusion

For the foregoing reasons, the court finds that the defendants' motion for summary judgment is well taken and should be granted. A separate order in accord with this opinion will issue this day.

This 31st day of March, 2022.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE

---

[1] "[A] suit against a municipal officer in his official capacity is treated as a suit against the municipality." *Adams v. May*, 903 F. Supp. 2d 433, 440 n.63 (S.D. Miss. 2012) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 n.55 (1978)).